# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 16-10055-EFM

GARY COOKS,

    *Defendant.*

## MEMORANDUM AND ORDER

Defendant Gary Cooks was pulled over for driving with a suspended license. The traffic stop gave rise to a protective sweep that uncovered a pill bottle. And that pill bottle led to a search of the entire vehicle that uncovered a firearm in the trunk. As a result, Cooks is now charged with possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Cooks moves to suppress all evidence obtained from the search of his car. Although the protective sweep of Cooks' vehicle was lawful, the Court finds that there was not probable cause to search the trunk. Cooks' motion to suppress (Doc. 19) is granted and all evidence recovered from the trunk is suppressed.

### I.    Factual and Procedural Background

On or about April 1, 2016, Officer Jared Henry of the Wichita Police Department responded to a reported aggravated assault. The victim claimed an individual had leaned out of a

tan Chevy Impala and pointed a gun at her. The victim provided the Impala's tag number, and Officer Henry learned that the tag was registered to a tan Chevy Impala belonging to Gary Cooks. The victim's description matched Cooks, although she failed to pick him out from a photo lineup. Officer Henry checked Cooks' Facebook profile, and found that that on March 25, Cooks had posted a video of what appeared to be him brandishing a firearm. Officer Henry also learned that Cooks was a convicted felon with a suspended driver's license.

On April 7, Officer Henry observed Cooks leaving his residence in the tan Impala. Shortly thereafter, Officer Henry pulled Cooks over for driving with a suspended license. Upon initial contact, Officer Henry confirmed Cooks' identity and asked him to step out of the vehicle. Officer Henry then patted Cooks down for weapons. Finding none, Officer Henry directed Cooks to sit on the curb under supervision of another officer that had arrived on scene. Officer Henry then proceeded to conduct a protective sweep of the immediate vicinity of the area Cooks was occupying in the car. Although Officer Henry knew that Cooks' license was suspended, he testified that he did not intend on placing Cooks under arrest at the time he conducted the protective sweep.

While conducting the protective sweep, Officer Henry opened the middle console—located in the armrest between the driver and passenger seat—and found a prescription pill bottle with approximately 20 pills inside of it. The label had been ripped off of the bottle. At this point, Officer Henry asked Cooks about the pills. Cooks stated that they were Lortabs that had been prescribed to him following a dental procedure. Cooks claimed that he had the procedure 60 days earlier, and had refilled the prescription for Lortabs 30 days ago. Officer Henry asked if Cooks had a label, or some document to verify that he had the Lortabs pursuant to a valid prescription. Cooks stated that he did not have anything on him or in the car to immediately

verify the prescription, but he offered to show Officer Henry his dental work and medical insurance information in an attempt to assuage any suspicions. Cooks claimed that whenever he got a new prescription, he would put the pills in the same old pill bottle that had the label ripped off. Officer Henry did not follow up on any of Cooks' explanations.

Officer Henry found Cooks' answers suspicious. He believed that Cooks did not have a valid prescription for the Lortabs, and at that moment, felt he had probable cause to arrest Cooks for possession of narcotics. Officer Henry also believed he had probable cause to search the rest of the car for additional narcotics. He conducted a search of the entire vehicle and discovered a handgun and a jar of marijuana inside of a bag in the trunk. At that point, Cooks was placed under arrest.

Cooks now moves to suppress the evidence from the car, arguing that the protective sweep was improper and the search of the trunk was not supported by probable cause.

## II.  Analysis

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[1]  "The Fourth Amendment generally requires police to secure a warrant before conducting a search."[2]  But there are exceptions to the warrant requirement. Officer Henry did not acquire a warrant to search Cooks' vehicle, and thus, the Court must consider whether any exceptions to the warrant requirement apply.

---

[1] U.S. Const. amend. IV.

[2] *Maryland v. Dyson*, 527 U.S. 465, 466 (2013) (citing *California v. Carney*, 471 U.S. 389, 390-91 (1985)).

There are two searches at issue: (1) Officer Henry's protective sweep of the vehicle immediately upon pulling Cooks over; and (2) Officer Henry's more thorough search of the vehicle, including the trunk. The Court will consider each search in turn.

### A. Protective Sweep

Cooks argues that under *Arizona v. Gant*,[3] Officer Henry's protective sweep of the vehicle exceeded the scope of a search incident to arrest. But this argument conflates two distinct concepts: the search incident to arrest and the protective sweep.

"A search incident to arrest allows a search not only of the arrestee, but also of the area within his 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.' "[4] The search incident to arrest doctrine was applied in the context of vehicles in *New York v. Belton*.[5] In *Belton*, the Supreme Court held that when an officer arrests an occupant of a vehicle, he may search the passenger compartment of that vehicle as a search incident to arrest.[6] Lower courts applied the *Belton* rule inconsistently, but most courts read *Belton* to allow an officer to search the vehicle even after he had arrested the occupants and secured them in a patrol car.[7] In 2009, the Supreme Court decided *Arizona v. Gant*,[8] noting that *Belton* was being interpreted too broadly to allow officers to conduct searches

---

[3] 556 U.S. 332 (2009).

[4] *United States v. Rollins*, 190 F. App'x 739, 143 (10th Cir. 2006) (quoting *Chimel v. California*, 395 U.S. 752, 762-63 (1969)).

[5] 453 U.S. 545 (1981).

[6] *Id.* at 460.

[7] *Arizona v. Gant*, 556 U.S. 332, 341-42 (2009).

[8] 556 U.S. 332 (2009).

that were divorced from the underlying rationale of the search incident to arrest doctrine.[9] The Court went on to hold that the search of a vehicle and its passenger compartments incident to arrest is only allowed (1) when the arrestee is unsecured and within reaching distance of the area to be searched or (2) when the officer reasonably believes that evidence of the crime of arrest might be found.[10]

Distinct from the search incident to arrest is the protective sweep. In *Terry v. Ohio*,[11] the Supreme Court held that an officer may search a suspect for weapons if he reasonably believes he is dealing with an armed and dangerous individual.[12] Such a search is commonly referred to as a "protective search" or "protective sweep." In *Michigan v. Long*,[13] the Court applied *Terry* to situations in which an officer has conducted a traffic stop.[14] Thus, an officer may conduct a protective sweep of a vehicle if he reasonably believes that the suspect poses a danger.[15] The purpose of the protective sweep is officer safety, and it is "limited to those areas in which a weapon may be placed or hidden."[16] The protective sweep may encompass the glove compartment and any other area that could contain a weapon and to which the suspect could later gain access.[17]

---

[9] *Id.* at 343.

[10] *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004).

[11] 392 U.S. 1 (1968)

[12] *Id.* at 27.

[13] 463 U.S. 1032 (1983).

[14] *Id.* at 1035 ("We hold that the protective search of the passenger compartment was reasonable under the principles articulated in *Terry*.").

[15] *United States v. Dennison*, 410 F.3d 1203, 1210 (10th Cir. 2005) (citing *Long*, 463 U.S. at 1036)).

[16] *Long*, 463 U.S. at 1049.

[17] *United States v. Palmer*, 360 F.3d 1243, 1248 (10th Cir. 2004).

Notably, the protective sweep is not subject to the limits placed on a search incident to arrest. A protective sweep usually occurs before a suspect is placed under arrest, and in some cases when a protective sweep is performed, the suspect might not be arrested at all. "In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is complete."[18] And therefore, unlike a search incident to arrest, a protective sweep of a vehicle may be conducted even when the suspect is not in reaching distance of the area at the time of the search.[19]

When Officer Henry conducted his protective sweep of Cooks' vehicle, Cooks was not under arrest. At that point, Cooks was only stopped for driving on a suspended license—and Officer Henry testified that he did intend to arrest Cooks for that offense. Had Officer Henry not found Cooks' Lortabs, the encounter might have ended with Cooks returning to his vehicle. Therefore, the facts in this case are much more akin to *Michigan v. Long* than *Arizona v. Gant*, and the limitations on searches incident to arrest do not apply.[20]

In other words, Officer Henry's initial search was a protective sweep and not a search incident to arrest. Officer Henry was authorized to conduct a protective sweep if there was reasonable, articulable suspicion that Cooks could be armed.[21] It had been reported to Officer Henry that an individual matching Cooks' appearance had brandished a handgun from a tan Chevy Impala just a week earlier. And Officer Henry had viewed a recently uploaded Facebook

---

[18] *Gant*, 556 U.S. at 352. (Scalia, J., concurring).

[19] *Id.* ("The rule of *Michigan v. Long* is not at issue here.").

[20] *United States v. Chambers*, 383 F. App'x 719, 722 (10th Cir. 2010) ("The goal of a protective sweep is, in part, to secure a vehicle so that when the defendant is *returned to the vehicle* he is not likely to injure the officers. It is that distinction between a search incident to arrest and a protective sweep that makes *Arizona v. Gant* inapplicable.").

[21] *Long*, 463 U.S. at 1049.

video of Cooks brandishing what appeared to be a handgun.  Given these facts, Officer Henry was justified in conducting a protective sweep of Cooks' vehicle.  Additionally, the search did not exceed the scope allowed for under the law.  Officer Henry limited the search to areas within reaching distance that could have contained a weapon.  The prescription pill bottle was located in such an area.  And so, Officer Henry uncovered the prescription pill bottle and Lortabs while conducting a legal search.

Because the pills were discovered through a lawful protective sweep, the Court will not suppress them as evidence.  The Court now turns to Officer Henry's search of the trunk of Cooks' vehicle.

### B. Search of the Trunk

A police officer may conduct a warrantless search of a vehicle if he has probable cause to believe contraband will be found inside.[22]  In such circumstances, "the officer may search the entire vehicle, including the trunk and all containers therein that might contain contraband."[23]  After questioning Cooks about the pill bottle, Officer Henry believed that Cooks possessed the pills illegally.

Officer Henry said he was struck by several things in his conversation with Cooks.  First, that Cooks was unusually talkative and tried to change the subject when asked about the pills.  Officer Henry testified that, in his experience, such behavior suggested dishonesty.  Second, Officer Henry found it suspicious that there were approximately 20 pills in the bottle for a 60 day-old prescription that had only been refilled once.  Third, when asked to verify the prescription, Cooks presented his health insurance card, but not an actual label or something to

---

[22] *United States v. Vasquez*, 555 F.3d 923, 930 (10th Cir. 2009).

[23] *United States v. Bradford*, 423 F.3d 1149, 1160 (10th Cir. 2005).

verify that the Lortabs were lawfully prescribed him.  Fourth, Officer Henry found it unbelievable that Cooks would place legally prescribed pills in an unmarked prescription pill bottle.  Cooks' explanation, Officer Henry testified, was simply incredible.  Accordingly, Officer Henry felt that he had probable cause to arrest Cooks for possessing the Lortabs illegally and to search the rest of the vehicle.

Cooks argues that the pill bottle and his explanations was not enough evidence to provide Officer Henry with probable cause to search his trunk.  At the hearing on his motion to suppress, Cooks' counsel argued that instead of searching the vehicle at the scene, Officer Henry "could have had the car impounded. [He] could have gotten a warrant to try to search it."  While the Court agrees that Officer Henry certainly could have tried to get a search warrant, he would have been unsuccessful because probable cause was lacking.

Probable cause to search is established where known facts and circumstances would lead a reasonable person to believe evidence of a crime will be found.[24]  There must be a nexus between the suspected criminal activity and the place to be searched.[25]  Probable cause is measured against an objective standard of reasonableness and cannot be established "simply by piling hunch upon hunch."[26]  Rather, the Court must look at the facts and consider not only those supporting probable cause, but also "those that militate against it."[27]

In this case, there was insufficient evidence to establish probable cause for a search of the trunk.  In his testimony, Officer Henry was able to articulate why he was suspicious of Cooks'

---

[24] *See Ornelas v. United States*, 517 U.S. 690, 696 (1996).

[25] *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

[26] *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007); *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004).

[27] *Valenzeula*, 365 F.3d at 897.

answers. And indeed, if the test were reasonable suspicion, the Court would certainly find that Officer Henry had a reasonable, articulable suspicion of criminal activity.[28] But "[r]easonable suspicion is a less demanding standard than probable cause."[29] Cooks gave plausible answers to Officer Henry's questions about the pills. And while Officer Henry's suspicions may have been justified, the evidence did not rise to the level of probable cause to search the vehicle.

Most conversations between a law enforcement officer and one suspected of criminal activity in situations such as this, that give rise to probable cause supporting a more thorough search, arise because the suspect gives responses that in light of the known facts are illogical or make no sense. Cooks' responses that he had recently had undergone a dental procedure, had been prescribed pain pills for that procedure, and had the pain medication refilled, is not illogical or nonsensical.[30] While it was unusual that the medication was contained in a bottle with the label removed, Cooks' story was otherwise coherent and consistent with the known facts at the time. Moreover, though Cooks could not immediately provide a pill bottle label showing a prescription for Lortabs issued to him, he did offer to display the dental work to the officer to prove that he had received recent treatment, and he did offer to show his health insurance card. Both offers were implicitly declined.

In light of all the facts then known to the officer, it is not illogical, unreasonable or necessarily unbelievable that Cooks actually had a dental procedure, that he had received a prescription for pain medication because of that procedure, that perhaps after refilling the

---

[28] *See Terry*, 392 U.S. at 30.

[29] *Alabama v. White*, 496 U.S. 325, 330 (1990).

[30] This is particularly true given the officer's testimony, in response to a question from the Court, that he did not find it unusual that Cooks was carrying the Lortabs in the car with him; only that they were in an unlabeled bottle.

prescription his pain subsided somewhat so that much of his refilled medication would still remain. Though perhaps unusual, these representations viewed in total are not so implausible or unbelievable to rise from the level of reasonable suspicion to that of probable cause. The Court does not believe that, on this showing alone, a neutral magistrate would have found a sufficient showing of probable cause to have issued a search warrant. Nor does this Court find a sufficient showing of probable cause. Thus Officer Henry's warrantless search was unlawful.

Viewed objectively, the evidence did not establish a fair probability that contraband would found in the trunk. Thus, Officer Henry did not have probable cause to search Cooks' trunk, and the evidence retrieved from that search is suppressed.

### III.  Conclusion

Officer Henry reasonably believed that Cooks could have been armed, and therefore, was justified in conducting a protective sweep of the vehicle. But Officer Henry went on to search Cooks' trunk without probable cause. Because Officer Henry searched the trunk of Cooks' vehicle without probable cause to do so, Cooks' motion is granted and all evidence recovered from the trunk is suppressed.

**IT IS THEREFORE ORDERED** that Cooks' Motion to Suppress (Doc. 19) is hereby **GRANTED.**

**IT IS SO ORDERED**.

Dated this 28th day of November, 2016.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE